MARK A. PRUNER, CA Bar No. 105259
1206 "Q" Street, Suite 1
Sacramento, CA 95811
Telephone: (916) 447-1121
Facsimile: (916) 447-9661
Email Address: mpruner@prunerlaw.com

Attorney for Defendant
River City Waste Recyclers, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a Non-Profit Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>RIVER CITY WASTE RECYCLERS, LLC,<br><br>Defendant. | Case No.: 2:14-CV-01452-KJM-CKD<br><br>**SUPPLEMENTAL DECLARATION OF BRYAN WILSON IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY**<br><br>[Federal Rules of Civil Procedure, Rule 56; Eastern District Local Rule 260]<br><br>Hearing Date: January 29, 2016<br>Time: 10:00 a.m.<br>Courtroom: 3<br>Judge: Honorable Kimberly J. Mueller |

I, BRYAN WILSON, declare:

1. I am the sole member and manager of defendant River City Waste Recycling, LLC, a California limited liability company ("**River City**"). I am making this supplemental declaration in further opposition to plaintiff's motion for partial summary judgment in the above-entitled action.

///

2. Plaintiff's complaint, filed in mid-2014, claims certain of defendant's actions in the first part of 2014 violate one or more storm water discharge standards.

3. In attacking defendant's actions in 2014, plaintiff's expert (Matthew Hagemann Declaration, Paras. 9 - 16) applies standards which did not become effective until July 1, 2015, well after the complaint was filed. Among other things, plaintiff's expert seeks to apply the "85th percentile" (and other) standards for detention and new sediment basins as contained in the new General Permit. The form of the General Permit under this defendant operated and was permitted in 2014 did not contain any standards for detention and new sediment basins. To apply standards which came into effect well after the complaint and warning letter were served is a grave of error by plaintiff.

4. As further support for defendant's opposition to plaintiff's motion for partial summary judgment, and to clarify that the 2014 General Permit did not become effective until July 1, 2015, attached hereto as Exhibit A are material portions of new General Permit (first three pages, and page 36 (showing the new detention and sediment basin standard which plaintiff wrongly applies) and other pages related to Best Management Practices). Exhibit A is a true and correct copy of the 2014 General Permit – not effective until July 1, 2015 - the first three pages, and page 36, and the National Pollutant Discharge Elimination System (NPDES) Fact Sheet, first two pages, and pages 38 and 39 of the NPDES Fact Sheet).

5. The Hagemann Declaration, Paragraph 16, claims that the 2007 Storm Water Quality Design manual for the Sacramento and South Placer Regions ("Manual") applies to defendant's operations. This Manual is more of a public works document, and is not part of the NPDES, nor is the Manual part of or required under any version of the General Permit.

6. At all times I was inspected for storm water discharge issues by the Regional Water Quality Board. Robert Ditto, and environmental scientist, CPESC, CPSWQ, QSD, with the Water Board's Storm Water Compliance and Enforcement unit, approved defendant's

BMPs. Among other things, Mr. Ditto approved defendant's 2014 detention and sediment basin as a BMP, making on-site storm water collection efforts by defendant compliant with regulatory authority. Attached as Exhibit B hereto is a true and correct email exchange between myself and Mr. Ditto at the Water Board showing that the basin and related ditch make defendant in compliance.

7. The facts set forth in my December 3, 2015 declaration in opposition to the motion for partial summary judgment are true and correct and remain unchanged.

The facts stated above are personally known to me and, if called as a witness, I will competently testify thereto under oath.

I declare under penalty of perjury under the laws of the United States, and under the laws of the State of California, that the foregoing is true and correct.

Executed January 15, 2016, at Sacramento, California.

/s/ Bryan Wilson

BRYAN WILSON

# EXHIBIT A

NATIONAL POLLUTANT DISCHARGE ELIMINATION SYSTEM (NPDES)

# GENERAL PERMIT FOR STORM WATER DISCHARGES ASSOCIATED WITH INDUSTRIAL ACTIVITIES

## ORDER NPDES NO. CAS000001

| | |
|---|---|
| This Order was adopted by the State Water Resources Control Board on: | **April 1, 2014** |
| This Order shall become effective on: | **July 1, 2015** |
| This Order shall expire on: | **June 30, 2020** |

IT IS HEREBY ORDERED that as of July 1, 2015 this Order supersedes Order 97-03-DWQ except for Order 97-03-DWQ's requirement to submit annual reports by July 1, 2015 and except for enforcement purposes. As of July 1, 2015, a Discharger shall comply with the requirements in this Order to meet the provisions contained in Division 7 of the California Water Code (commencing with section 13000) and regulations adopted thereunder, and the provisions of the federal Clean Water Act and regulations and guidelines adopted thereunder.

**CERTIFICATION**

I, Jeanine Townsend, Clerk to the Board, do hereby certify that this Order, including its fact sheet, attachments, and appendices is a full, true, and correct copy of an Order adopted by the State Water Resources Control Board, on April 1, 2014.

| | |
|---|---|
| AYE: | Chair Felicia Marcus<br>Vice Chair Frances Spivy-Weber<br>Board Member Tam M. Doduc<br>Board Member Steven Moore |
| NAY: | None |
| ABSENT: | Board Member Dorene D'Adamo |
| ABSTAIN: | None |

Jeanine Townsend

Jeanine Townsend
Clerk to the Board

# TABLE OF CONTENTS


I. FINDINGS .......... 1
II. RECEIVING GENERAL PERMIT COVERAGE .......... 14
III. DISCHARGE PROHIBITIONS .......... 19
IV. AUTHORIZED NON-STORM WATER DISCHARGES (NSWDS) .......... 19
V. EFFLUENT LIMITATIONS .......... 20
VI. RECEIVING WATER LIMITATIONS .......... 21
VII. TOTAL MAXIMUM DAILY LOADS (TMDLS) .......... 21
VIII. DISCHARGES SUBJECT TO THE CALIFORNIA OCEAN PLAN .......... 22
IX. TRAINING QUALIFICATIONS .......... 23
X. STORM WATER POLLUTION PREVENTION PLAN (SWPPP) .......... 24
XI. MONITORING .......... 37
XII. EXCEEDANCE RESPONSE ACTIONS (ERAS) .......... 48
XIII. INACTIVE MINING OPERATION CERTIFICATION .......... 56
XIV. COMPLIANCE GROUPS AND COMPLIANCE GROUP LEADERS .......... 57
XV. ANNUAL COMPREHENSIVE FACILITY COMPLIANCE EVALUATION (ANNUAL EVALUATION) 59
XVI. ANNUAL REPORT .......... 59
XVII. CONDITIONAL EXCLUSION - NO EXPOSURE CERTIFICATION (NEC) .......... 60
XVIII. SPECIAL REQUIREMENTS - PLASTIC MATERIALS .......... 64
XIX. REGIONAL WATER BOARD AUTHORITIES .......... 66
XX. SPECIAL CONDITIONS .......... 67
XXI. STANDARD CONDITIONS .......... 69


## TABLES


**TABLE 1:** Additional Analytical Parameters .......... 41
**TABLE 2:** Parameter NAL Values, Test Methods, and Reporting Units .......... 43


## ATTACHMENTS AND APPENDICES


Attachment A Facilities Covered
Attachment B Acronyms
Attachment C Glossary
Attachment D Permit Registration Documents (PRDs)
Attachment E TMDL Implementation
Attachment F Effluent Limitation Guidelines (ELGs)
Attachment G Requirements for Dischargers Who Have Been Granted An Ocean Plan Exception for Discharges to Areas of Special Biological Significance (ASBS)
Attachment H Storm Water Sample Collection and Handling Instructions
Appendix 1 Storm Water Pollution Prevention Plan (SWPPP) Checklist
Appendix 2 No Exposure Certification (NEC) Conditional Exclusion Instructions
Appendix 3 Waterbodies with Clean Water Act section 303(d) Listed Impairments

# I. FINDINGS

## A. General Findings

The State Water Resources Control Board (State Water Board) finds that:

1. The Federal Clean Water Act (Clean Water Act) prohibits certain discharges of storm water containing pollutants except in compliance with a National Pollutant Discharge Elimination System (NPDES) permit. (33 U.S.C. §§ 1311, 1342 (also referred to as Clean Water Act §§ 301, 402).) The United States Environmental Protection Agency (U.S. EPA) promulgates federal regulations to implement the Clean Water Act's mandate to control pollutants in storm water discharges. (40 C.F.R. § 122, et seq.) The NPDES permit must require implementation of Best Available Technology Economically Achievable (BAT) and Best Conventional Pollutant Control Technology (BCT) to reduce or prevent pollutants in storm water discharges and authorized non-storm water discharges (NSWDs). The NPDES permit must also include additional requirements necessary to implement applicable water quality objectives or water quality standards (water quality standards, collectively).

2. On November 16, 1990, U.S. EPA promulgated Phase I storm water regulations in compliance with section 402(p) of the Clean Water Act. (55 Fed. Reg. 47990, codified at 40 C.F.R. § 122.26.) These regulations require operators of facilities subject to storm water permitting (Dischargers), that discharge storm water associated with industrial activity (industrial storm water discharges), to obtain an NPDES permit. Section 402(p)(3)(A) of the Clean Water Act also requires that permits for discharges associated with industrial activity include requirements necessary to meet water quality standards.

3. Phase II storm water regulations[1] require permitting for storm water discharges from facilities owned and operated by a municipality with a population of less than 100,000. The previous exemption from the Phase I permitting requirements under section 1068 of the Intermodal Surface Transportation Efficiency Act of 1991 was eliminated.

4. This Order (General Permit) is an NPDES General Permit issued in compliance with section 402 of the Clean Water Act and shall take effect on July 1, 2015, provided that the Regional Administrator of U.S. EPA has no objection. If the U.S. EPA Regional Administrator has an objection, this General Permit will not become effective until the objection is withdrawn.

5. This action to adopt an NPDES General Permit is exempt from the provisions of the California Environmental Quality Act (Pub. Resources Code, § 21000, et seq.) in accordance with section 13389 of the Water Code. (See *County of*

[1] U.S. EPA. Final NPDES Phase II Rule. <http://cfpub.epa.gov/npdes/stormwater/swfinal.cfm>. [as of February 4, 2014]

6. Design Storm Standards for Treatment Control BMPs

All new treatment control BMPs employed by the Discharger to comply with Section X.H.2 Advanced BMPs and new sediment basins installed after the effective date of this order shall be designed to comply with design storm standards in this Section, except as provided in an Industrial Activity BMP Demonstration (Section XII.D.2.a). A Factor of Safety shall be incorporated into the design of all treatment control BMPs to ensure that storm water is sufficiently treated throughout the life of the treatment control BMPs. The design storm standards for treatment control BMPs are as follows:

a. Volume-based BMPs: The Discharger, at a minimum, shall calculate[13] the volume to be treated using one of the following methods:

    i. The volume of runoff produced from an 85th percentile 24-hour storm event, as determined from local, historical rainfall records;

    ii. The volume of runoff produced by the 85th percentile 24-hour storm event, determined as the maximized capture runoff volume for the facility, from the formula recommended in the Water Environment Federation's Manual of Practice;[14] or,

    iii. The volume of annual runoff required to achieve 80% or more treatment, determined in accordance with the methodology set forth in the latest edition of California Stormwater Best Management Practices Handbook[15], using local, historical rainfall records.

b. Flow-based BMPs: The Discharger shall calculate the flow needed to be treated using one of the following methods:

    i. The maximum flow rate of runoff produced from a rainfall intensity of at least 0.2 inches per hour for each hour of a storm event;

    ii. The maximum flow rate of runoff produced by the 85th percentile hourly rainfall intensity, as determined from local historical rainfall records, multiplied by a factor of two; or,

    iii. The maximum flow rate of runoff, as determined using local historical rainfall records, that achieves approximately the same reduction in total pollutant loads as would be achieved by treatment of the 85th percentile hourly rainfall intensity multiplied by a factor of two.

---

[13] All hydrologic calculations shall be certified by a California licensed professional engineer in accordance with the Professional Engineers Act (Bus. & Prof. Code § 6700, et seq).

[14] Water Environment Federation (WEF). Manual of Practice No. 23/ ASCE Manual of Practice No. 87, cited in chapter 5 (1998 Edition) and Cited in Chapter 3 (2012 Edition) .

[15] California Stormwater Quality Association. Stormwater Best Management Practice New Development and Redevelopment Handbook. < http://www.casqa.org/ >. [as of July 3, 2013].

**NATIONAL POLLUTANT DISCHARGE ELIMINATION SYSTEM (NPDES)**
**GENERAL PERMIT FACT SHEET FOR**
**STORM WATER DISCHARGES**
**ASSOCIATED WITH INDUSTRIAL ACTIVITIES**
**NPDES NO. CAS000001**

*The factsheet to the IGP was updated in January 2015 to correct typographical errors. The deadline listed in Section I.D.13 (page 8) and Section II.G.1 (page 27) of the factsheet for dischargers with outfalls to ocean waters to develop and implement a monitoring program in compliance with the California Ocean Plan model monitoring provisions was corrected to July 1, 2015, which is the deadline listed in finding 44 in the general order.

## TABLE OF CONTENTS

**I. BACKGROUND** ........ **1**
A. Purpose ........ 1
B. History ........ 1
C. Blue Ribbon Panel of Experts (Panel) ........ 2
D. Summary of Significant Changes in this General Permit ........ 4
**II. TECHNICAL RATIONALE FOR REQUIREMENTS IN THIS GENERAL PERMIT** ........ **9**
A. Receiving General Permit Coverage ........ 9
B. Discharge Prohibitions ........ 14
C. Non-Storm Water Discharges (NSWDs) ........ 14
D. Effluent Limitations ........ 15
E. Receiving Water Limitations and Water Quality Standards ........ 22
F. Total Maximum Daily Loads (TMDLs) ........ 22
G. Discharges Subject to the California Ocean Plan ........ 26
H. Training Qualifications ........ 27
I. Storm Water Pollution Prevention Plan (SWPPP) ........ 29
J. Monitoring and Reporting Requirements ........ 42
K. Exceedance Response Actions (ERAs) ........ 55
L. Inactive Mining Operations ........ 66
M. Compliance Groups and Compliance Group Leaders ........ 66
N. Annual Evaluation ........ 68
O. Annual Report ........ 68
P. Conditional Exclusion - No Exposure Certification (NEC) Requirements ........ 68
Q. Special Requirements - Plastic Materials ........ 69
R. Regional Water Board Authorities ........ 70
S. Special Conditions: Requirements for Dischargers Claiming the "No Discharge" Option in the Notice of Non-Applicability ........ 71

### FIGURES

FIGURE 1: Example Waste Load Allocations Proposed Translation: Ballona Creek Estuary – Toxic Pollutants 23
FIGURE 2: Five Phases for Developing and Implementing an Industrial Storm Water Pollution Prevention Plan (SWPPP) 31
FIGURE 3: Compliance Determination Flowchart 45

### TABLES

TABLE 1: Role-Specific Permit Requirements........ 28
TABLE 2: Example - Assessment of Potential Industrial Pollution Sources and Corresponding BMPs Summary. 32

containers when not in use, clean and manage spills from waste, and observe outdoor areas and equipment that may come into contact with waste and become contaminated.

m. Dust Generation and Vehicle Tracking of Industrial Materials

Section 2.1.2.12 of the 2008 MSGP requires that generation of dust and off-site tracking of raw, final, or waste materials is minimized. This General Permit does not require minimization of dust generation and vehicle tracking of industrial materials as a minimum BMP directly. Dust generation and vehicle tracking of industrial materials BMPs are included in Section X.H.1.a ("good housekeeping") of this General Permit where Dischargers must prevent dust generation from industrial materials or activities and contain all stored non-solid industrial materials that can be transported or dispersed via wind or come in contact with storm water, and Section X.H.1.d. ("material handling and waste management") of this General Permit, which requires Dischargers to contain non-solid industrial materials or wastes that can be dispersed via wind erosion or come into contact with storm water during handling.

n. Quality Assurance and Record Keeping

Section 2.1.2 of the 2008 MSGP does not directly designate record keeping as a control measure. This General Permit (Section X.H.1.g) includes quality assurance and record keeping as a minimum BMP and requires Dischargers to implement three (3) general BMPs. These BMPs include: developing and implementing procedures to ensure that all elements of the SWPPP are implemented, develop a method of tracking and recording the implementation of all BMPs identified in the SWPPP, and a requirement to keep and maintain those records. This ensures that management procedures are designed and permit requirements are implemented by appropriate staff.

o. Implementation of BMPs in the SWPPP

Like the previous permit, this General Permit does not assign Dischargers a schedule to implement BMPs. Instead, this General Permit requires Dischargers to select the appropriate schedule to implement the minimum BMPs. In addition, this General Permit requires Dischargers to identify, as necessary, any BMPs that should be implemented prior to precipitation events. Although Dischargers are required to maintain internal procedures to ensure the BMPs are implemented according to schedule or prior to precipitation events, Dischargers are only required to certify in the Annual Report whether they complied with the BMP implementation requirements.

Dischargers are required to implement an effective suite of BMPs that meet the technology and water-quality based limitations of this General Permit. Based upon Regional Water Board staff inspections, there is significant variation between Dischargers' interpretations of what BMPs were necessary to comply with the previous permit. This General Permit establishes a new requirement that Dischargers must implement, to the extent feasible, specific minimum BMPs

to reduce or prevent the presence of pollutants in their industrial storm water discharge. In addition, due to the wide variety of facilities conducting numerous and differing industrial activities throughout the state, this General Permit retains the requirement from the previous permit that Dischargers establish and implement additional BMPs beyond the minimum. Implementation of this General Permit's minimum BMPs, together with any necessary advanced BMPs, will result in compliance with the effluent limitations of this General Permit (Section V.A). All Dischargers must evaluate their facilities and determine the best practices within their industry considering technological availability and economic practicability and achievability to implement these minimum BMPs and any advanced BMPs.

The State Water Board has selected minimum BMPs that are generally applicable at all facilities. The minimum BMPs are consistent with the types of BMPs normally found in properly developed SWPPPs and, in most cases, should represent a significant portion of the effort required for a Discharger to achieve compliance. Due to the diverse industries covered by this General Permit, the development of a more comprehensive list of minimum BMPs is not currently feasible. The selection, applicability, and effectiveness of a given BMP is often related to industrial activity type and to facility-specific facts and circumstances. Advanced BMPs must be selected and implemented by Dischargers, based on the type of industry and facility-specific conditions, to the extent necessary to comply with the technology-based effluent limitation requirements of this General Permit.

Failure to implement all of the minimum BMPs to the extent feasible is a violation of this General Permit. (Section X.H.1.) Dischargers must justify any determination that it is infeasible to implement a minimum BMP in the SWPPP (Section X.H.4.b). Failure to implement advanced BMPs necessary to achieve compliance with either the technology or water quality standards requirements in this General Permit is a violation of this General Permit.

p. Temporary Suspension of Industrial Activities

The exception for inactive and unstaffed sites in section 6.2.1.3 of the 2008 MSGP does not require a Discharger with a facility that is inactive and unstaffed with no industrial materials or activities exposed to storm water (in accordance with the substantive requirements in 40 Code of Federal Regulations section 122.26(g)) to complete benchmark monitoring. The Discharger is required to sign and certify a statement in the SWPPP verifying that the site is inactive and unstaffed. If circumstances change and industrial materials or activities become exposed to storm water or the facility becomes active and/or staffed, this exception no longer applies and the Discharger is required to begin complying immediately with the applicable benchmark monitoring requirements under part 6.2 of the 2008 MSGP.

This General Permit allows Dischargers to temporarily suspend monitoring at facilities where industrial activities have been suspended in accordance with Section X.H.3. This is only intended for Dischargers with facilities where it is

# EXHIBIT B

Gmail by Google

Bryan Wilson <bryanrcwr@gmail.com>

## Detention Basin Elder Creek

Bryan Wilson <bryanrcwr@gmail.com>
To: Robert.Ditto@waterboards.ca.gov

Mon, Dec 8, 2014 at 1:12 PM

Robert,

I appreciate you for talking with me this morning regarding River City Waste Recyclers, WDID;5S34I023293 . Per our conversation you would accept an email response for the order 13267 dated 12/5/14 requesting a technical report. Please review the report as follows and contact me immediately should you need further information.

1. List of potential sources for pollutants leading to exceedances in Aluminum, chemical oxygen and Iron;

Scrap metal

2. For the tested seasons the order refers to we had straw wattles along the discharge perimeter of our yard. As an added BMP for the 13-14 season additional wattles were added to surround the metal tipping area creating two water treatment barriers. BMPs were maintained as indicated in the annual reports and SWPPP.

3. A new BMP for the 14-15 season is a drainage ditch leading to a detention basin. The BMP consists of a 150 ft long drainage ditch running the length of Watt Ave where the yard sheet flows. The length of this ditch assures there will be no unauthorized discharge. At the area the yard had previously discharged, an additional detention basin has been added and a berm has been built up 2 ft around the edges of both the detention area and drainage ditch. The detention basin is approximately 4 ft deep by 20 ft square. During the past storm event 12/3/2014, we had over three inches of rain classified as a 10 year rain event. During the entire day from 7am until 5 pm the perimeter was monitored by both myself and a third party QSD, neither of us could find any discharge from the site to sample. Being this BMP with stood a 10 year event, no additional BMP's are being constructed at this time.

4. The aforementioned new BMP drainage ditch and detention area have been documented in our 2014-2015 SWPPP which is attached with pictures of the improvement. As described in our SWPPP, the yard will be monitored for discharge and sampled should storm water leave our property.

Thank you again for your time. Contact me immediately should we be in violation of our permit at any time.

Best regards,

Bryan Wilson
916-705-4451

Sent from my iPhone

---

**4 attachments**



**FullSizeRender.jpg**
3318K



**FullSizeRender.jpg**
3827K



**FullSizeRender.jpg**
2593K



**ELDER SWPP UPDATE Oct 2014.docx**
**23K**

Bryan Wilson <bryanrcwr@gmail.com>

## 8940 Elder Creek Order for Technical Report

3 messages

**Bryan Wilson** <bryanrcwr@gmail.com> Mon, Dec 15, 2014 at 10:08 AM
To: Robert.Ditto@waterboards.ca.gov

Bob,

Please confirm that you received my technical report and pictures last week? If you are satisfied, let me know so that the matter can be closed in our file.

Thank you,

Bryan

**Ditto, Robert@Waterboards** <Robert.Ditto@waterboards.ca.gov> Mon, Dec 15, 2014 at 11:04 AM
To: Bryan Wilson <bryanrcwr@gmail.com>

Bryan,

I rec'd your report. How has your site held up with the rain? Are you still containing all the water?

Thanks

Robert Ditto, CPESC, CPSWQ, QSD

Environmental Scientist

Storm Water Compliance and Enforcement

11020 Sun Center Drive, #200

Rancho Cordova, CA 95670

916-464-4841

916-464-4681 (fax)

**From:** Bryan Wilson [mailto:bryanrcwr@gmail.com]
**Sent:** Monday, December 15, 2014 10:08 AM

**To:** Ditto, Robert@Waterboards
**Subject:** 8940 Elder Creek Order for Technical Report

[Quoted text hidden]

---

**Bryan Wilson** <bryanrcwr@gmail.com> Mon, Dec 15, 2014 at 11:23 AM
To: "Ditto, Robert@Waterboards" <Robert.Ditto@waterboards.ca.gov>

Bob,

Thanks for getting back to me so quickly. Yes, our detention basin was able to contain last Thursday's storm event. It was 2.76 inches for us, not quite as much rain as the storm on 12/3/14. Let me know if you need anything else for the order to be satisfied?

I appreciate your help,

Bryan
[Quoted text hidden]

## CERTIFICATE OF SERVICE

I, the undersigned, declare:

That I am employed in the County of Sacramento, State of California; over the age of 18; and not a party to the within action. My business address is 1206 "Q" Street, Suite 1, Sacramento, California, 95811.

On January 15, 2016, I served the following:

**SUPPLEMENTAL DECLARATION OF BRYAN WILSON IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY**

XXX BY ELECTRONIC MAIL: as follows: I caused a copy of such document to be transmitted via electronic mail in Portable Document Format ("PDF") Adobe Acrobat from the electronic address: mpruner@prunerlaw.com to the following parties:

addressed as follows:

MICHAEL R. LOZEAU, ESQ. michael@lozeaudrury.com
REBECCA L. DAVIS, ESQ. rebecca@lozeaudrury.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration is executed this 15th day of January, 2016, at Sacramento, California.

AMANDA PALMQUIST