Michael R. Lozeau (State Bar No. 142893)
Richard T. Drury (State Bar No. 163559)
Rebecca L. Davis (State Bar No. 271662)
LOZEAU DRURY LLP
410 12th Street, Suite 250
Oakland, CA 94607
Tel: (510) 836-4200
Fax: (510) 836-4205 (fax)
E-mail: michael@lozeaudrury.com
          richard@lozeaudrury.com
          rebecca@lozeaudrury.com

Attorneys for Plaintiff
CALIFORNIA SPORTSFISHING PROTECTION ALLIANCE

Mark A. Pruner (State Bar No. 105259)
1206 "Q" Street, Suite 1
Sacramento, CA 95811
Tel: (916) 447-1121
Fax: (916) 447-9661
E-mail: mpruner@prunerlaw.com

Attorney for Defendant
RIVER CITY WASTE RECYCLERS, LLC

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTSFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>        Plaintiff,<br><br>    vs.<br><br>RIVER CITY WASTE RECYCLERS, LLC, a California Limited Liability Company,<br><br>        Defendant. | Case No.  2:14-cv-01452-KJM-CKD<br><br>Assigned to Hon. Kimberly J. Mueller<br><br>CONSENT DECREE |

**WHEREAS**, Plaintiffs CALIFORNIA SPORTFISHING PROTECTION ALLIANCE ("**CSPA**" or "**Plaintiff**") is a 501(c)(3) non-profit, public benefit corporation duly organized and existing under and by virtue of the laws of the State of California, dedicated to the protection, enhancement, and restoration of the Sacramento River, its tributaries, and other California waters.  Bill Jennings is the Chairperson, and a member, of CSPA.

**WHEREAS**, Defendant RIVER CITY WASTE RECYCLERS, LLC ("**River City**" or "**Defendant**"), is a limited liability company, duly organized and existing under and by virtue of the laws of the State of California.

**WHEREAS** River City, as a leasehold tenant, operates a wood and metal recycling facility at 8940 Elder Creek Road in Sacramento, California (the "**Facility**").

**WHEREAS**, Defendant discharges storm surface water from the Facility pursuant to State Water Resources Control Board Water Quality Order No. 97-03-DWQ, Waste Discharge Requirements for Discharges of Storm Water Associated with Industrial Activities Excluding Construction Activities (hereinafter the "**1997 General Permit**"), and, since July 1, 2015, Order No. 2014-0057-DWQ, National Pollutant Discharge Elimination System General Permit No. CAS000001, Waste Discharge Requirements for Discharges of Storm Water Associated with Industrial Activities Excluding Construction Activities (hereinafter, the "**2015 General Permit**") (collectively "General Permits").  The 2015 General Permit's requirements apply to "stormwater associated with industrial activity" as defined at 40 Code of Federal Regulations § 122.26(b)(14);

**WHEREAS**, on or about March 31, 2014, CSPA served River City, the United States Attorney General, the national and Region IX offices of the United States Environmental Protection Agency, the State Water Resources Control Board ("**State Board**") and the Regional Water Quality Control Board – Central Valley Region ("**Regional Board**") with Notices of Violation and Intent to File Suit ("**60-Day Notice**") under Sections 505(a)(1) and (f) of the Federal Water Pollution Control Act (the "**Act**" or "**Clean Water Act**"), 33 U.S.C. § 1365(a)(1) and (f);

**WHEREAS**, the 60-Day Notice alleged that River City has violated and continued to violate Sections 301(a) and 402(p) of the Clean Water Act, 33 U.S.C. § 1311(a) and 1342(p), due to discharges of polluted storm water from the Facility in violation of the 1997 General Permit;

**WHEREAS**, on June 17, 2014, Plaintiff filed a complaint against Defendant in the United States District Court for the Eastern District of California, entitled *California Sportfishing Protection Alliance, et al. v. River City Waste Recyclers, LLC* (Case No. 2:14-cv-01452-KJM-CKD) (hereinafter "**Complaint**" or "**Action**").  A true and correct copy of the Complaint as well as the 60-Day Notice are attached hereto as <u>Exhibit 1</u>;

**WHEREAS,** on September 6, 2016, the Court entered partial summary judgment, granting in part, and denying in part, CSPA's motion for partial summary judgment, holding as follows:

1. CSPA has standing to bring this action;

2. River City has violated Section 301 by failing to implement BMPs to achieve BAT/BCT at the Facility for aluminum, copper, iron, lead, TSS, zinc and COD from April 2011 through the present date;

3. River City has violated Section 301 and Section C(2) of the 1997 General Permit's receiving water limitations for aluminum, copper, iron, lead, and zinc on March 14, 2012, April 26, 2012, October 22, 2012, April 4, 2013, and March 10, 2014;

4. River City has violated Section 301 and the 1997 General Permit by failing to prepare and maintain an adequate Storm Water Pollution Prevent Plan ("**SWPPP**") from September 2011 through June 2015; and

5. River City has violated Section 301 and the 1997 General Permit by failing to prepare and implement an adequate monitoring and reporting program from September 2011 through June 2015.

/////

/////

Consent Decree                                                    Case No. 2:14-cv-01452-KJM-CKD

1    **WHEREAS**, the only issues remaining for trial include the days and/or dates of

2  violations, the amount of civil penalties to be paid by River City, and the nature and scope of

3  any injunctive relief to ensure River City's compliance with the 2015 General Permit;

4    **WHEREAS**, CSPA and River City (hereinafter, collectively referred to as the

5  "**Parties**") agree that CSPA is a prevailing party and is, for purposes of this Consent Decree,

6  entitled to an award of attorneys' fees pursuant to Section 505(d) of the Act, 33 U.S.C.

7  §1365(d);

8    **WHEREAS**, the Parties have agreed that it is in the Parties' mutual interest to enter into

9  this Consent Decree setting forth terms and conditions appropriate to resolving the remaining

10  issues arising from the Complaint without further proceedings;

11    **WHEREAS**, after agreement of the Parties to this proposed Consent Decree, the

12  proposed Consent Decree will be submitted to the United States Department of Justice and the

13  national and Region IX offices of the United States Environmental Protection Agency for the

14  statutory review period pursuant to 33 U.S.C. § 1365(c) of at least 45 days prior to the

15  submittal of this Consent Decree to the Court for entry;

16    **NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE**

17  **SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS**

18  **FOLLOWS**:

19    1.    Defendant agrees, to the extent it has not already done so, to take all reasonable

20  steps to operate the Facility in compliance with the applicable requirements of the 2015

21  General Permit and Clean Water Act.  If after the Effective Date the applicable requirements of

22  the 2015 General Permit and Clean Water Act should change, Defendant agrees to comply with

23  the controlling law, including revisions to the 2015 General Permit as authorized by law.  The

24  Parties agree that this Consent Decree is not intended to enlarge or increase the obligations

25  imposed on Defendant by law, but is designed to ensure Defendant's compliance with its legal

26  obligations.

27  /////

28

Consent Decree                                                    Case No. 2:14-cv-01452-KJM-CKD

2.      The obligations of this Consent Decree apply to and are binding upon CSPA and upon River City and any successors, assigns, or other entities or persons otherwise bound by law.

3.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

<u>IMPROVEMENTS TO THE FACILITY'S</u>

<u>STORM WATER POLLUTION CONTROL MEASURES</u>

4.      By no later than December 1, 2016, Defendant shall install improved storm water containment structures by: (a) expanding the existing stormwater basin at the Facility, so that it is designed to capture the 85th-percentile, 24-hour storm event at the Facility (approximately 6,125 cubic feet of storm water storage), (b) retrofitting the existing storm water basin with an overflow structure that: (1) provides for passive filtering of any overflows to reduce sediment and metals prior to discharging from the Facility, and (2) facilitates the taking of samples by the Facility in compliance with the 2015 General Permit.  River City shall confirm the design and sizing of the containment structure(s) by retaining a registered engineer to certify by not later than January 1, 2017 that the drawings and structures (as built) will capture the 85th-percentile, 24-hour storm event at the Facility (approximately 6,125 cubic feet of storm water storage).  The engineer's certification shall be in writing and shall be forwarded to CSPA within 3 business days of receipt by River City.  River City shall operate the containment structure(s) to maintain and maximize the capacity of the storm water containment structure(s).

5.      Defendant shall prevent any discharges of storm water from the Facility except through the engineered storm water overflow structure associated with the storm water containment structure(s).  Any storm water flows from the Facility during a particular storm event that consist of flows exceeding the 85th-percentile, 24-hour storm event at the Facility and which overflow or by-pass the containment structures shall be subject to passive filtering /////

Consent Decree                                                                    Case No. 2:14-cv-01452-KJM-CKD

consisting of, at a minimum, Filtrex fiber rolls, or equivalent, designed to remove metals and suspended solids from storm water.

6.     Within thirty (30) days of the Effective Date, Defendant shall extend the existing awning off of the rear of the office building to cover the active initial receiving area for smaller recyclable materials, including for example batteries, CRV materials (plastics, cans, bottles), consumer electronics, smaller automotive parts, wiring (copper), tanks, lead sinkers, tubing, and electronic motors, to prevent rainwater from contacting such sources during their receipt.

7.     Within thirty (30) days of the Effective Date, Defendant shall take all reasonable steps to store any open bins in a covered area or to take such other reasonable steps so as to prevent open bins from coming into contact with rainfall or storm water runoff.  Any bins stored outside shall either be covered or shall be empty and clean.  From October 1 through May 30 of each year, a yard supervisor shall inspect the entire Facility each business day. During the yard supervisor's inspections each business day during the wet season, the supervisor shall take all reasonable steps to ensure that all operational bins have lids or covers and, prior to any rain event, are closed or covered.

8.     All maintenance, repair, and replacement activities relating to the storm water pollution control measures contained in this Consent Decree shall be recorded and described on appropriate written records.  Such records shall include, but not be limited to, any maintenance activities of any storm water impoundment or collection equipment and filter roll repairs and/or replacements. The written records for each wet season shall be kept with the written records required under the Facility's SWPPP.

## SAMPLING, MONITORING, INSPECTION AND REPORTING

River City shall comply with the applicable sampling, monitoring, inspection and reporting requirements of the 2015 General Permit.  In addition, all samples shall be accompanied by a photograph of the discharge that was sampled.  Defendant shall maintain a written log of all sampling events, including the name of the person taking the sample, the date, time, weather conditions, the name and address of laboratory where the samples were delivered

Consent Decree                                                    Case No. 2:14-cv-01452-KJM-CKD

for testing, the date the samples were delivered to the laboratory, and whether a chain of custody form was completed for the sample and by whom.

9.     All samples collected from the Facility shall be delivered to a California state accredited environmental laboratory and shall be analyzed for Aluminum, Copper, Zinc, Lead, Iron, Total Suspended Solids ("TSS"), pH, Chemical Oxygen Demand ("COD"), and Oil and Grease, as well as any other parameters required to be analyzed by the 2015 General Permit.

10.     Analytical methods used by Defendant or its analytical laboratory shall be adequate to detect the individual constituents at or below the Numeric Action Levels set forth in the General Permit and the Water Quality-Based Limits set forth in Paragraph 12, Table A.

11.     Results from the Facility's sampling and analysis shall be provided to CSPA within fourteen (14) days of receipt by River City of the written laboratory report from each sampling event.

## MEET AND CONFER REGARDING
## EXCEEDANCE OF LEVELS OF POTENTIAL CONCERN AND VOLUME OF
## RUNOFF TREATED

12.     If the Facility's storm water sampling results during the term of this Consent Decree indicate that: (1) any analytical result exceeds the numeric water quality-based limits listed in Table A of this paragraph; (2) the average of the analytical results for a particular parameter indicates that storm water discharges from the Facility exceed the annual NALs (as set forth in the 2015 General Permit), or (3) if two or more analytical results from samples taken for any parameter during the term of this Consent Decree exceed the instantaneous maximum NAL, River City agrees to take responsive actions to improve its storm water management practices, including re-evaluating its structural and non-structural BMPs and considering implementing additional BMPs aimed at reducing levels observed in storm water samples.

/////

/////

/////

Consent Decree                                                Case No. 2:14-cv-01452-KJM-CKD

**Table A**

| Parameter | Water Quality-Based Limits |
|---|---|
| Aluminum | 0.2 mg/L |
| Copper | 0.0056 mg/L |
| Iron | 0.3 mg/L |
| Lead | 0.015 mg/L |
| Zinc | 0.1 mg/L |

13.     In furtherance of that objective, River City shall prepare a written statement ("**Memorandum**") discussing:

(1)  Any exceedance or exceedances of Water Quality-Based Limits;

(2)  Any exceedance or exceedances of NALs;

(3)  An explanation of the possible cause(s) and/or source(s) of any exceedance; and

(4)  Responsive actions to improve its storm water management practices, including modified or additional feasible BMPs to be considered to further reduce the possibility of future exceedance(s), and the proposed dates that such actions will be taken.

Such Memorandum shall be e-mailed and sent via first class mail to CSPA not later than July 30th during each year of the term of this Consent Decree.

14.     Upon receipt of the Memorandum, CSPA may review and comment on any identified or omitted additional measures.  If requested by CSPA within thirty (60) days of receipt of such Memorandum, CSPA and River City shall meet and confer to discuss the contents of the Memorandum and the adequacy of proposed measures to improve the quality of the Facility's storm water to levels at or below the Water Quality-Based Limits or NALs.  If requested by CSPA, River City shall allow CSPA to conduct a site inspection in furtherance of the meet and confer.  If within twenty-one (21) days of the parties meeting and conferring, the parties do not agree on the adequacy of the additional measures set forth in the Memorandum,

the Parties may bring a motion before the District Court consistent with Paragraph 23 below.  If CSPA does not request a meet and confer regarding the Memorandum within the sixty (60) day period provided for in this paragraph, CSPA shall be deemed to have waived any right to object to such Memorandum pursuant to this Consent Decree.  The Parties may agree in writing to extend any dates contained in this paragraph in order to further this paragraph's meet and confer procedure.

15.     Any concurrence or failure to object by CSPA with regard to the reasonableness of any additional measures required by this Consent Decree or implemented by River City shall not be deemed to be an admission of the adequacy of such measures should they fail to bring the Facility's storm water discharges into compliance with applicable water quality criteria or the BAT/BCT requirements set forth in the 2015 General Permit.

16.     In addition to any site inspections conducted as part of meeting and conferring on additional measures set forth above, Defendant shall permit representatives of Plaintiff to perform one (1) additional site visit at the Facility during normal daylight business hours during the term of this Consent Decree; provided that Plaintiff provides Defendant with at least one week prior notice via e-mail and telephone using the contact information listed in Paragraph 33 below.  Plaintiff's representatives during any such inspection, and under any inspection contemplated under this Consent Decree, shall be limited to one (1) legal representative and one (1) technical compliance representative.  Plaintiff shall not allow any governmental representative to accompany it on any inspection without Defendant's prior written approval.

17.     Within thirty (30) days of the Effective Date of this Consent Decree, Defendant shall amend the Facility's SWPPP to incorporate all changes, improvements and best management practices set forth in this Consent Decree.  In addition, the SWPPP shall be amended to fully comply with the 2015 General Permit, including but not limited to the following:

/////

Consent Decree                                                        Case No. 2:14-cv-01452-KJM-CKD

a.      The SWPPP must identify pollutant sources and potential pollutants in the Facility's storm water discharge, including but not limited to sources of aluminum, copper, lead, zinc, TSS, and COD;

b.      The SWPPP must identify how car parts and consumer electronics are processed, stored, and handled at the Facility;

c.      The SWPPP must include a site map identifying the Facility's boundaries, nearby water bodies, municipal storm drain inlets, and areas of industrial activity as defined in the 2015 General Permit and discussed in the Court's order dated September 6, 2016; and

d.      The SWPPP must be signed and certified by River City.

18.     Copies of the amended SWPPP shall be provided to CSPA within seven (7) business days of completion.

19.     During the term of this Consent Decree, Defendant shall provide Plaintiff with a copy of all documents submitted to the Regional Board or the State Board concerning any of the Facility's storm water discharges, including but not limited to all documents and reports submitted to the Regional Board and/or State Board as required by the General Permit.  Such documents and reports shall be mailed to Plaintiff contemporaneously with submission to such agency.  Defendant also shall provide Plaintiff a copy of all documents referenced in this agreement, including but not limited to logs or analyses, within fourteen (14) days of a written request (via e-mail or regular mail) by Plaintiff.

## MITIGATION FEES AND COSTS

20.     As mitigation of the violations alleged in Plaintiffs' Notice and Complaint, Defendant shall pay the sum of Fifteen Thousand dollars ($15,000.00) (the "**Payment**") to the Rose Foundation for Communities and the Environment ("**Rose Foundation**").  The Payment shall be conditioned on the following: (a) the Payment or any portion thereof shall not be disbursed or otherwise granted directly or indirectly to CSPA or Defendant, and (b) projects funded by the Payment shall be designed to benefit water quality in Morrison Creek and the

Sacramento-San Joaquin River Delta.  Within the latter of (1) fifteen (15) days of the Effective Date, or January 12, 2017, Defendant shall make the Payment to the Rose Foundation. Payment shall be made by check payable to "The Rose Foundation" and delivered to The Rose Foundation, 1970 Broadway, Suite 600, Oakland, CA 94607, Attn: Tim Little.  River City shall copy CSPA with any correspondence and a copy of the check sent to the Rose Foundation. The Rose Foundation shall provide notice to the Parties within thirty (30) days of when the funds are dispersed by the Rose Foundation, setting forth the recipient and purpose of the funds.

21.   **16. Fees, Costs, and Expenses**.  As reimbursement for CSPA's investigative, expert and attorneys' fees and costs, River City shall pay CSPA the sum of One Hundred Twenty-One Thousand dollars ($121,000).  Payment shall be made by River City by monthly installment payments of $2,000.00 with an initial payment to be made not later than May 1, 2017 and the final payment to be made not later than April 1, 2021 (12 monthly payments per year for four (4) years).  In addition to those monthly payments of $2,000.00, River City shall make an additional lump sum payment of Twenty-Five Thousand Dollars ($25,000.00) not later than May 1, 2021.  Payments by River City to CSPA shall be made in the form of checks payable to "Lozeau Drury LLP," and, upon the completion of all payments totaling $121,000 shall constitute full payment for all costs of litigation, including investigative, expert and attorneys' fees and costs incurred by CSPA that have or could have been claimed in connection with CSPA's claims, up to and including the District Court's entry of the Consent Decree.

**<u>DISPUTE RESOLUTION AND ENFORCEMENT OF CONSENT DECREE</u>**

22.   The Effective Date shall be the date this Consent Decree is approved and entered by the Court.  The Consent Decree shall continue in effect until the latter of (1) June 1, 2019, or (2) the last payment under Paragraph 21 is made.  This Court shall retain jurisdiction in this matter from the Effective Date through the date of its termination, for the purposes of enforcing the terms of this Consent Decree.  In addition, following the date of termination of this Consent

/////

Consent Decree                                                    Case No. 2:14-cv-01452-KJM-CKD

Decree, the Court shall retain jurisdiction for the purposes of enforcing this Decree for any disputes which arose prior to the termination of the Consent Decree.

23.     Except as specifically noted herein, any disputes with respect to any of the provisions of this Consent Decree shall be resolved through the following procedure.  The Parties agree to first meet and confer to resolve any dispute arising under this Consent Decree. The Parties shall meet and confer within fourteen (14) days of receiving written notification from a Party of a request for a meeting to determine the merits of the dispute or whether a violation has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the violation or dispute.  In the event that such disputes cannot be resolved through this meet and confer process or the Parties fail to meet and confer, the Party alleging the violation or dispute may submit the dispute via motion to the assigned District Court Judge. The prevailing party may seek recovery of reasonable attorney fees and costs incurred in bringing any such motion, and such fees and costs shall be awarded pursuant to the provisions set forth in the Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d) and applicable case law interpreting such provisions.

## MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

24.     In consideration of the above, and except as otherwise provided by this Consent Decree, the Parties hereby forever and fully release each other and their respective successors, assigns, officers, agents, employees, and all persons, firms and corporations having an interest in them, from any and all claims and demands of any kind, nature, or description whatsoever, and from any and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which the Parties have against each other arising from Plaintiff's allegations and claims as set forth in the 60-Day Notice Letter, in the Complaint, or otherwise in this Action for storm water pollution discharges at the Facility up to and including the Termination Date of this Consent Decree.

25.     The Parties acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

Consent Decree                                                   Case No. 2:14-cv-01452-KJM-CKD

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Except as otherwise provided by this Consent Decree, each of the Parties hereby waive and relinquish any rights or benefits it may have under California Civil Code section 1542 with respect to any other claims against each other arising from the allegations and claims as set forth in the 60-Day Notice Letter, in the Complaint, or otherwise in this Action for storm water pollution discharges at the Facility up to and including the Termination Date of this Consent Decree.

26.     Plaintiff shall submit this Consent Decree to the U.S. EPA and the U.S. Department of Justice (hereinafter, the "**Agencies**") via certified mail, return receipt requested, within five (5) days after obtaining the final signatures of the Parties executing this Consent Decree for review consistent with 40 C.F.R. § 135.5.  The Agencies' review period expires forty-five (45) days after receipt of the Consent Decree by both Agencies, as evidenced by the return receipts, copies of which shall be provided to Defendant upon receipt by Plaintiff.  In the event that the Agencies comment negatively on the provisions of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Agencies.  If the Parties are unable to resolve any issue(s) raised by the Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the Magistrate Judge assigned as a settlement judge in this matter or a Court-appointed mediator to resolve the issue(s).

## <u>MISCELLANEOUS PROVISIONS</u>

27.     The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

28.     In the event that any of the provisions of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

/////

---

Consent Decree                                                    Case No. 2:14-cv-01452-KJM-CKD

29.     The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.

30.     The undersigned are authorized to execute this Consent Decree on behalf of their respective parties and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

31.     Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

32.     All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

33.     Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Plaintiff pursuant to this Consent Decree shall be e-mailed and sent by U.S. Mail, postage prepaid, and addressed as follows:

Bill Jennings, Chairman
California Sportfishing Protection Alliance
3536 Rainier Road
Stockton, CA 95204
Tel: (209) 464-5067
E-mail: deltakeep@aol.com

With copies sent to:

Michael R. Lozeau
Rebecca L. Davis
Lozeau Drury LLP
410 12th Street, Suite 250
Oakland, CA 94607
Tel: (510) 836-4200

Email: michael@lozeaudrury.com; rebecca@lozeaudrury.com

/////
/////

Consent Decree                                          Case No. 2:14-cv-01452-KJM-CKD

Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Defendant pursuant to this Consent Decree shall be sent by e-mail and U.S. Mail, postage prepaid, and addressed as follows:

Bryan Wilson
River City Waste Recyclers LLC
8940 Elder Creek Road
Sacramento. CA 95829
Tel: (916) 383-5511
E-mail: bryanrcwr@gmail.com

With copies sent to:

Mark A. Pruner
1206 "Q" Street, Suite 1
Sacramento, CA 95811
Tel: (916) 447-1121
E-mail: mpruner@prunerlaw.com

Each party shall notify the other parties of any change in their contact information within 14 days of any such change.

34.     Signatures of the Parties transmitted by facsimile or by e-mail shall be deemed binding.

35.     No Party shall be considered to be in default in the performance of any of its obligations when a failure to perform is due to a "Force Majeure." A Force Majeure event is any act of God, war, fire, earthquake, flood, and restraint by court order or public authority.  A Force Majeure event does not include normal inclement weather, such as anything less than or equal to a 100 year/24 hour storm event, or inability to pay.  Any Party seeking to rely upon this paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the Force Majeure.

36.     If for any reason the Court should decline to approve this Consent Decree in the form presented, the Parties shall agree to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Court.

1      37.     Nothing in this Consent Decree shall preclude Defendant from implementing protective measures for storm water drainage in excess of the protections set forth herein.

      38.     The Parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment.  Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to CSPA and River City.

Dated: _____     CALIFORNIA SPORTFISHING PROTECTION ALLIANCE


By:   _____[1]
           Bill Jennings, Chairperson

Dated: _____     RIVER CITY WASTE RECYCLERS LLC


By:   _____
           Bryan Wilson, Sole Manager

**APPROVED AS TO FORM**:


     For DEFENDANT

Date: _____, 2016     LAW OFFICE OF MARK A. PRUNER


     _____
     By:   Mark A. Pruner, Esq.


     For PLAINTIFFS

Date: _____, 2016     LOZEAU DRURY LLP


     _____
     By:   Michael R. Lozeau, Esq.

[1] The court acknowledges receipt of the proposed consent decree signed by all parties and counsel.

Consent Decree           Case No. 2:14-cv-01452-KJM-CKD

The court has reviewed the foregoing proposed Consent Decree and the letter filed by the United States on November 10, 2016.  *See* ECF No. 66.  Any proposed modification of the Consent Decree shall be provided to the United States as outlined in the letter.  *Id.* at 3.

**APPROVED AND SO ORDERED.**

DATED: December 7, 2016.

_____
UNITED STATES DISTRICT JUDGE

Consent Decree                                                  Case No. 2:14-cv-01452-KJM-CKD